**IN THE COURT OF APPEALS OF IOWA**

No. 22-1771
Filed December 21, 2022

**IN THE INTEREST OF D.I., A.I., A.I., and A.I.,**
**Minor Children,**

**R.I., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.

　　　The mother appeals the termination of her parental rights to four of her

children. **AFFIRMED.**

　　　Joseph G. Martin, Cedar Falls, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

　　　Tammy L. Banning, Waterloo, attorney and guardian ad litem for minor

children.

　　　Considered by Bower, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to four of her children,[1] who ranged in ages from eight to two years old at the time of the termination trial, under Iowa Code section 232.116(1)(f) and (h) (2022).[2]  On appeal, the mother challenges the statutory grounds for termination, claiming the children could have come home at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4).  In the alternative, she maintains she should get more time to work toward reunification.  *See id.* § 232.104(2)(b).

"We review termination of parental rights de novo."  *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).  "We are not bound by the factual findings of the juvenile court" but give them weight, "particularly regarding credibility determinations."  *Id.*

The juvenile court terminated the mother's rights to the oldest three children under paragraph (f) and to the youngest child under paragraph (h) of section 232.116(1).  Termination under these grounds requires proof of several elements not at issue here and the common element of whether the children could be returned to the mother's custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (defining "at the present time" as the time of the termination hearing).  The mother argues the children could be returned because the initial concerns of the Iowa Department of Health and Human Services (DHHS), the condition of the family

---

[1] The mother had a fifth child in early 2022; that child remained in her care at the time of the termination hearing and is not at issue here.
[2] The juvenile court also terminated the parental rights of the children's father.  He does not appeal.

home and domestic violence in the parents' relationship, were resolved by the time of the termination trial. We disagree.

True, the family home is in a better condition; it went from unlivable (in late 2019) due to hoarding to the extent there was not space for the children to sleep or play safely to mostly cleaned up and habitable for several months in 2022 (leading up to the termination trial in June and July). But, according to testimony from the maternal grandmother, the mother has long shown hoarding tendencies, and yet the mother refused to accept a diagnosis of hoarding disorder from a mental-health provider and did not work on the issue in therapy. Two or three months before the termination hearing, the home was observed by DHHS and the basement remained a safety concern with three large rooms so filled with items that the rooms posed a danger if the children entered them. An additional concern was that over the course of DHHS involvement, even after cleaning up the clutter, the condition quickly deteriorated and became unsafe again. While the family home was mostly habitable at the time of the termination trial, we cannot say the mother's issues with hoarding are resolved.

Even more importantly, while it seems like the children's father is out of the picture,[3] the children's struggles that stem from witnessing violence in the parents' relationship are severe and ongoing. The mental-health counselor of the oldest two children testified she diagnosed the oldest child with attention deficit

---

[3] The mother and father are married. The mother had her fifth child with the father in early 2022; she testified she has not seen him since July 2021 when a no-contact order was put in place. There is no indication the mother has filed for divorce from the father, and DHHS questioned whether the mother and father's relationship was truly over.

hyperactivity disorder and posttraumatic stress disorder. The second-oldest child was diagnosed with oppositional defiant disorder and unspecified trauma and stressor related disorder. According to the counselor, each of these children showed signs of being exposed to trauma as each struggled with emotional regulation and lying. And it is well-documented that the children exhibit extreme behaviors of violence and aggression toward each other and the mother; they also do not respond to the mother's directions and have placed themselves in dangerous situations as a result, such as running away from the mother near a busy street. The counselor linked these behaviors to both the violence the children witnessed in their home and the mother's historic lack of follow through when setting expectations and giving the kids directions. Even more, the mother failed to follow up with recommended care for the children, believing they did not need the additional services and evaluations.

The DHHS social worker emphasized that the level of acting out and aggression is not just "normal" kid behavior. She testified about ending a visit in May early due to concerns the children could be seriously injured and described another visit at a local park when a police officer intervened in a visit to help keep the children safe. The worker explained that DHHS was so concerned about the chances the children may cause serious harm to themselves or each other that visits were recently switched so the mother only has two children in her care at once. All in all, the social worker, a woman who provided parenting education and support to the mother for a number of months through a local service, the maternal grandmother, and the court appointed special advocate each opined that the

mother was unable to parent the four children at issue plus the newborn baby who remains in her care.

In contrast, the children are better behaved and less aggressive when they are in the care of the foster parents. In the months leading up to the termination trial, with counseling and—at least for the oldest—medication management, the oldest children showed growth; they were better able to regulate their emotions and behaviors. The structure and predictability provided by the foster homes[4] also played a significant role, and the counselor opined this would also be important for the children to have going forward. The children could not be safely returned to the mother's custody at the time of the termination hearing. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) (considering whether children could be "safely returned to [the parent's] custody").

Next, the mother claims she should be given more time to work toward reunification. *See* Iowa Code § 232.104(2)(b). The children were formally removed from the mother's custody in November 2020.[5] And then, following the permanency hearing in November 2021, the court "deferred [permanency] for approximately six months." During that delay, some of the children were returned to the mother's care in a trial placement, which ended with a founded allegation of physical abuse by the mother against one of the children in February 2022. By the second day of the termination trial—in July 2022—the children had been out of the

---

[4] The oldest three children live with one foster family, while the youngest child at issue resides with another.

[5] DHHS became involved with the family in November 2019, and the children were "safety planned" out of the family home twice due to domestic violence and the condition of the home before the formal removal in November 2020.

mother's custody for approximately twenty months. The time for delay has passed; termination of the mother's parental rights is in the best interests of these four children. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) ("The 'legislature has established a limited time frame for parents to demonstrate their ability to be parents.'" (citation omitted)); *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("[P]atience with parents can soon translate into intolerable hardship for their children.").

**AFFIRMED.**